UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT LEE BOLES, JR.,

               Plaintiff,                    Case No. 1:24-cv-630

v.                                      Honorable Ray Kent

SAVANNAH P. SISCO et al.,

               Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff paid the applicable civil action filing fee when he initiated this action. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 1, PageID.4.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros.,*

*Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.[2] 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). Further, under Rule 21 of the Federal Rules of Civil Procedure, a court may at any time, with or without motion, add or drop a party for misjoinder or nonjoinder. Fed. R. Civ. P. 21. Applying this standard regarding joinder, the Court will drop Defendant Morrison as misjoined. The Court will dismiss Plaintiff's claims against Defendant Morrison without prejudice. Plaintiff's Fourteenth Amendment equal protection claims against Defendants Sisco and Dirschell will remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following LCF staff: Prisoner

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

[2] The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

Counselors Savannah P. Sisco and Kevin S. Dirschell; and Warden Bryan Morrison. (Compl., ECF No. 1, PageID.2.) Plaintiff sues Defendants Sisco and Dirschell in their individual capacities, and Plaintiff sues Defendant Morrison "in his official capacity for declaratory and injunctive relief relating to prisoners on the eastside[3] [of the facility] being denied desks and chairs in their living area when the westside are given these cell furnishing[s] as policy requires." (*Id.*, PageID.2, 7.)

In Plaintiff's complaint, he states that he was housed in the "Honor Cubicle/Room" in Unit B2 at LCF from 2013 to March 22, 2024. (*Id.*, PageID.9.) "On March 19, 2024, Plaintiff pled guilty to a class II minor misconduct from him accidentally activating the fire alarm in [the] B-2 mop room." (*Id.*) The following day, March 20, 2024, Plaintiff informed Defendant Sisco "that he had pled guilty to a minor misconduct charge," and "[h]e informed her that beds B-2-52 and B-2-59 [were] empty, and he would like to move into one of those areas of the day room." (*Id.*, PageID.9–10.) In response, Defendant Sisco stated that "she had heard about Plaintiff refusing to move on the eastside[4] to participate in the college program because they did not have desks and chairs in the cubicle, and that Plaintiff had no choice in moving over there this time." (*Id.*, PageID.10.) Plaintiff then stated that "other prisoners living in the honor cubicles who received minor misconduct guilty findings had the option to move in B-2 dayroom or one of the other dayrooms on the eastside." (*Id.*) Plaintiff "told Defendant Sisco that he should be given the same option as the other prisoners in the unit," and "she again told Plaintiff that he will be moved to the westside." (*Id.*)

---

[3] In his complaint, Plaintiff is inconsistent as to which side of the facility does not have desks and chairs. Based on later allegations in the complaint, it appears that Plaintiff may have reversed the "westside" and the "eastside" in the above sentence.

[4] It appears that Plaintiff may have intended to reference the "westside," rather than the "eastside" here.

On March 21, 2024, when Defendant Dirschell was conducting rounds in the unit, Plaintiff told Dirschell about the conversation Plaintiff had with Defendant Sisco. (*Id.*) Plaintiff asked Defendant Dirschell "to allow him to move in the dayroom as [Dirschell] had done with other prisoners who received minor class II guilty findings." (*Id.*) Defendant Dirschell told Plaintiff that he would "be moved to the area of the prisoner who is moved into the Honor Cubicle." (*Id.*, PageID.11.) Thereafter, on March 22, 2024, inmate Young "moved from B-2-49 to the Honor Cubicle." (*Id.*) "Instead of Plaintiff being moved into the area of the prisoner who moved to Honor Cubicle[,] he was moved to the eastside."[5] (*Id.*)

Plaintiff provides the following examples of inmates "who received class II misconduct[s] . . . and [were] found guilty and given the option to move into the dayroom in B-2 or other dayrooms on the eastside." (*Id.*, PageID.12.) First, Plaintiff identifies inmate Young, "who lived in [the] Honor Cubicle B-2-29 for several years," and in 2022, he was found guilty of a class II misconduct charge. (*Id.*) Inmate Young "spoke to Defendant Dirschell about moving to B-2-49 in the dayroom, and [Dirschell] approved the move." (*Id.*) Second, Plaintiff identifies inmate Craft, who "lived in Honor Cubicle 3 in 2022, . . . was found guilty of a class II minor misconduct and allowed to move to B-2-53 by Defendant Dirschell." (*Id.*) Third, Plaintiff identifies inmate McMillion, "who lived in B-2-4 Honor Cubicle" and was found guilty of a class II misconduct charge in 2023. (*Id.*) Inmate McMillion asked Defendants Sisco and Dirschell "to be allowed to move to B-2-47 in the dayroom and they approved it." (*Id.*) Fourth, Plaintiff identifies inmate Holland, "who lived in B-2-19 Honor Cubicle" and was found guilty of a class II misconduct charge. (*Id.*) Inmate Holland asked Defendant Sisco "to be allowed to move in the dayroom, but

---

[5] Again, it appears that Plaintiff may have intended to reference the "westside," rather than the "eastside."

because there [were not any] empty areas[,] she approved . . . him to move [to] B-3-63 dayroom on the eastside." (*Id.*, PageID.12–13.) Fifth, Plaintiff identifies inmate Buriel, who "moved from the eastside to Honor Cubicle B-2-2," and "[w]ithin a few months[,] he was found guilty of [a] class II minor misconduct." (*Id.*, PageID.13.) Inmate Buriel asked Defendant Sisco if "he could move to open bunk B-2-68 in the dayroom and she approved the move." (*Id.*) Sixth, Plaintiff identifies inmate Pittao, who "moved from the westside to Honor Cubicle B-2-1" in 2023, and "[w]ithin a few months[,] he was found guilty of [a] class II minor misconduct." (*Id.*) Inmate Pittao asked Defendant Sisco if he could "move to open bunk B-2-48 in the dayroom and she approved the move." (*Id.*)

In addition to the alleged unequal treatment discussed above, Plaintiff also alleges that Defendant Dirschell has "not been enforcing the Honor Room Criteria fairly where similar[ly] situated prisoners committing class II and more egregious class I misconducts ha[ve] not been moved from Honor Room/Cubicle." (*Id.*, PageID.14.) Plaintiff provides the following examples of this alleged unequal treatment. (*Id.*) First, Plaintiff states that in 2023, two inmates (Bowers and Killroy) were found guilty of fighting, which is a class I misconduct charge. (*Id.*) Plaintiff states that Defendant Dirschell approved inmate Bowers's move "to the eastside" and "allowed" inmate Killroy "to continue to live in [the] Honor Cubicle." (*Id.*) Plaintiff states that "Bowers is a Black male and Killroy is a white male." (*Id.*) Second, Plaintiff states that inmates Stocklin and Brown were both found guilty of fighting, and "Defendant Dirschell allowed [inmate] Stocklin to continue to live in [the] Honor Cubicle." (*Id.*) Plaintiff states that "[inmate] Stocklin is a white male and [inmate] Brown is Black." (*Id.*) Third, Plaintiff states that inmate Smith was found guilty of fighting, and he "was allowed to continue to live in [the] Honor Cubicle/Room." (*Id.*, PageID.14–15.) Fourth, Plaintiff states that inmate Menefee was found guilty of a class II misconduct charge,

6

and "[h]is dog and block rep[presentative] positions w[ere] given back to him after several weeks, and he continues to live in [the] Honor Cubicle." (*Id.*, PageID.15.) Fifth, Plaintiff states that inmate Reese was found guilty of fighting "and received sanctions, but Defendant Dirschell allowed . . . him to continue to live in [the] Honor Room." (*Id.*)

Plaintiff then alleges that inmates on the eastside and westside of LCF are treated differently because the units on the westside are not furnished with desks and chairs for each inmate, whereas the units on the eastside are furnished with desks and chairs. (*See id.*, PageID.15–16, 18.) Plaintiff states that on September 1, 2023, he "was selected to participate in the Western Michigan University Bachelor's program." (*Id.*, PageID.16.) Plaintiff states that he "did not wish to move to F-1 because of no desks or chairs and his concern about whether or not he would be able to keep his library clerk job," so "Plaintiff withdrew from the program." (*Id.*) Plaintiff further states that on March 24, 2024, upon his arrival at F-2-38, "a chair and desk [was] missing [from] the area." (*Id.*)

Based on the foregoing allegations, Plaintiff avers that Defendants violated his right to equal protection under the Fourteenth Amendment.[6] (*Id.*, PageID.17–18.) Plaintiff seeks a declaratory judgment and injunctive relief, as well as compensatory, punitive, and nominal damages. (*Id.*, PageID.19.)

---

[6] When setting forth his claims for relief, Plaintiff only references alleged violations of his equal protection rights under the Fourteenth Amendment. (*See* Compl., ECF No. 1, PageID.17–18.) Earlier in the complaint, when summarizing a grievance that he submitted, Plaintiff indicates that in the grievance, he stated that his Fourteenth Amendment equal protection rights and his Eighth Amendment right "to not be subject to cruel and unusual punishment" were violated. (*Id.*, PageID.11.) Plaintiff's complaint contains no further reference to, or supporting facts for, any Eighth Amendment violations by Defendants. To the extent that Plaintiff intended to raise any Eighth Amendment claims in the complaint, any such claims would be subject to dismissal for failure to state a claim because Plaintiff alleges insufficient facts to show that his Eighth Amendment rights were violated by the Defendants named in this suit.

## II.     Misjoinder

### A.     Joinder

Federal Rule of Civil Procedure 20(a) limits the joinder of parties in a single lawsuit, whereas Federal Rule of Civil Procedure 18(a) limits the joinder of claims. Rule 20(a)(2) governs when multiple defendants may be joined in one action:

> [p]ersons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action."

Fed. R. Civ. P. 20(a)(2). Rule 18(a) states: "A party asserting a claim . . . may join, as independent or alternative claims, as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a).

Courts have recognized that, where multiple parties are named, as in this case, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes relevant only when there is more than one party on one or both sides of the action. It is not concerned with joinder of claims, which is governed by Rule 18. Therefore, in actions involving multiple defendants Rule 20 operates independently of Rule 18. . . .
>
> Despite the broad language of Rule 18(a), plaintiff may join multiple defendants in a single action only if plaintiff asserts at least one claim to relief against each of them that arises out of the same transaction or occurrence and presents questions of law or fact common to all.

7 Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1655 (3d ed. 2001), *quoted in Proctor v. Applegate*, 661 F. Supp. 2d 743, 778 (E.D. Mich. 2009), *and Garcia v. Munoz*, No. 08-1648, 2008 WL 2064476, at *3 (D.N.J. May 14, 2008); *see also United States v. Mississippi*, 380 U.S. 128, 142–43 (1965) (discussing that joinder of defendants is permitted by Rule 20 if both commonality and same transaction requirements are satisfied).

Therefore, "a civil plaintiff may not name more than one defendant in his original or amended complaint unless one claim against each additional defendant is transactionally related

to the claim against the first defendant and involves a common question of law or fact." *Proctor*, 661 F. Supp. 2d at 778 (internal quotation marks omitted). When determining if civil rights claims arise from the same transaction or occurrence, a court may consider a variety of factors, including, "the time period during which the alleged acts occurred; whether the acts . . . are related; whether more than one act . . . is alleged; whether the same supervisors were involved, and whether the defendants were at different geographical locations." *Id.* (citation omitted).

Permitting improper joinder in a prisoner civil rights action also undermines the purpose of the PLRA, which was to reduce the large number of frivolous prisoner lawsuits that were being filed in the federal courts. *See Riley v. Kurtz*, 361 F.3d 906, 917 (6th Cir. 2004). The Seventh Circuit has explained that a prisoner like plaintiff may not join in one complaint all of the defendants against whom he may have a claim, unless the prisoner satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that [a multi]-claim, [multi]-defendant suit produce[s] but also to ensure that prisoners pay the required filing fees—for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . .
>
> A buckshot complaint that would be rejected if filed by a free person—say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions— should be rejected if filed by a prisoner.

*George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007); *see also Brown v. Blaine*, 185 F. App'x 166, 168–69 (3d Cir. 2006) (allowing an inmate to assert unrelated claims against new defendants based on actions taken after the filing of his original complaint would have defeated the purpose of the three strikes provision of PLRA).

Under these circumstances, to allow Plaintiff to proceed with improperly joined claims and Defendants in a single action would permit him to circumvent the PLRA's filing fee provisions and allow him to avoid having to incur a "strike" for purposes of § 1915(g), should any of his claims be dismissed as frivolous or for failure to state a claim. Courts are therefore obligated to reject misjoined claims like Plaintiff's. *See Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011).

Here, Defendant Sisco is the first Defendant named in the action. (*See* Compl., ECF No. 1, PageID.1–2.)[7] Plaintiff alleges that Defendant Sisco, as well as Defendant Dirschell, were involved in failing to give "the same option [to Plaintiff] as all other prisoners living in B-2 Honor Room/Cubicle who received class II minor misconduct[s] and found guilty." (*Id.*, PageID.17.) Specifically, Plaintiff alleges that Defendants Sisco and Dirschell were both involved in denying him the "choice to move in B-2 dayroom or another dayroom on the eastside." (*Id.*) Additionally, Plaintiff alleges that Defendant Dirschell has "not been enforcing the Honor Room Criteria fairly where similar[ly] situated prisoners committing class II and more egregious class I misconducts ha[ve] not been moved from [the] Honor Room/Cubicle." (*Id.*, PageID.14.)

Plaintiff's allegations against Defendants Sisco and Dirschell are transactionally related; however, Plaintiff's allegations against Sisco and Dirschell are transactionally *unrelated* to Plaintiff's allegations against Defendant Morrison. Plaintiff alleges that Defendant Morrison is liable for "prisoners on [one side of the facility] being denied desks and chairs in their living area when [prisoners on the other side of the facility] are given these cell furnishings as policy requires." (*Id.*, PageID.7.) Plaintiff does not allege that Defendant Morrison had any involvement in Plaintiff's housing placement following Plaintiff's guilty plea to the class II misconduct charge,

---

[7] The analysis of joinder must start somewhere. By accepting the first-named Defendant and the factual allegations against the first-named Defendant as the foundation for the joinder analysis, the Court is considering the issue of joinder of parties as Plaintiff has presented it in his complaint.

and he does not allege that Defendants Sisco and Dirschell have any involvement in determining whether the westside of the facility has desks and chairs. (*See generally id.*) Although Plaintiff alleges that in response to Plaintiff informing Defendant Sisco that "he had pled guilty to a minor misconduct charge" and that "he would like to move into [either B-2-52 and B-2-59 in] the day room," Defendant Sisco stated that "she had heard about Plaintiff refusing to move . . . to participate in the college program because they did not have desks and chairs in the cubicle, and that Plaintiff had no choice in moving over there this time," this statement does not show that Defendant Sisco had any involvement in deciding whether the westside units had desks and chairs.[8] (*Id.*, PageID.9–10.)

Therefore, Plaintiff's claims against Defendants Sisco and Dirschell are transactionally related. However, Plaintiff's claims against Defendant Morrison involve a discrete issue and are transactionally unrelated to the claims against Defendants Sisco and Dirschell. It appears that Plaintiff believes that all of the events set forth in the complaint are related simply because they occurred during his incarceration at LCF. However, such belief does not show that the claims arise out of the same transaction or occurrence. Accordingly, the Court concludes that Plaintiff's claims against Defendants Sisco and Dirschell are properly joined, but that Plaintiff has improperly joined Defendant Morrison to this action.

### B.    Remedy

Because the Court has concluded that Plaintiff has improperly joined Defendant Morrison to this action, the Court must determine an appropriate remedy. Under Rule 21 of the Federal Rules

---

[8] Similarly, although Plaintiff indicates that in a grievance he filed, he stated that he was "knowingly mov[ed] . . . where there [are] no desks and chairs in the living quarters," this statement does not show that Defendants Sisco and Dirschell had any involvement in deciding whether the westside units had desks and chairs. (Compl., ECF No. 1, PageID.11–12.)

of Civil Procedure, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Instead, Rule 21 provides two remedial options: (1) misjoined parties may be dropped on such terms as are just; or (2) any claims against misjoined parties may be severed and proceeded with separately. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 572–73 (2004) ("By now, 'it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time . . . .'" (citation omitted)); *DirecTV, Inc. v. Leto*, 467 F.3d 842, 845 (3d Cir. 2006); *see also Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988) ("[D]ismissal of claims against misjoined parties is appropriate."). "Because a district court's decision to remedy misjoinder by dropping and dismissing a party, rather than severing the relevant claim, may have important and potentially adverse statute-of-limitations consequences, the discretion delegated to the trial judge to dismiss under Rule 21 is restricted to what is 'just.'" *DirecTV*, 467 F.3d at 845.

At least three judicial circuits have interpreted "on such terms as are just" to mean without "gratuitous harm to the parties." *Strandlund v. Hawley*, 532 F.3d 741, 745 (8th Cir. 2008) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000)); *see also DirecTV*, 467 F.3d at 845. Such gratuitous harm exists if the dismissed parties lose the ability to prosecute an otherwise timely claim, such as where the applicable statute of limitations has lapsed, or the dismissal is with prejudice. *Strandlund*, 532 F.3d at 746; *DirecTV*, 467 F.3d at 846–47.

Plaintiff brings this action under 42 U.S.C. § 1983. For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(2); *Carroll v. Wilkerson*, 782 F.2d 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*

*v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996). It is not entirely clear on which date Plaintiff seeks to first hold Defendant Morrison liable for the inequality regarding desks and chairs in the housing units; however, Plaintiff first references this issue in connection to events that occurred in September of 2023. (*See* Compl., ECF No. 1, PageID.16.) Plaintiff's complaint provides no indication that the statute of limitations has or will run on Plaintiff's claims against Defendant Morrison, and Plaintiff has provided no basis for this Court to conclude that he would suffer gratuitous harm if his claims against Defendant Morrison are dismissed without prejudice.

Accordingly, the Court will exercise its discretion under Rule 21 and drop Defendant Morrison because Morrison is misjoined. The Court will dismiss Plaintiff's claims against Defendant Morrison without prejudice to the institution of a new, separate lawsuit.[9]

## III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that

---

[9] If Plaintiff wishes to proceed with his claims against Defendant Morrison, he may do so by filing a new civil action on the form provided by this Court, *see* W.D. Mich. LCivR 5.6(a), and paying the required filing fees or applying in the manner required by law to proceed *in forma pauperis*. As fully discussed in this opinion, Plaintiff is cautioned that he must limit all future actions to Defendants and claims that are transactionally related to one another. The Court may, in its discretion and without further warning, dismiss any future complaint, or part thereof, filed by Plaintiff that contains claims that are misjoined. Plaintiff is advised that simply because separate and discrete events occurred during Plaintiff's incarceration at a particular correctional facility does mean that all claims arising out of these events are properly joined.

is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Here, Plaintiff alleges that Defendants Sisco and Dirschell violated his equal protection rights under the Fourteenth Amendment. (Compl., ECF No. 1, PageID.17–18.) Plaintiff states that he brings his equal protection claims "based on the class of one theory."[10] (*Id.*, PageID.18.)

---

[10] The Court notes that when identifying inmates who Plaintiff believes were similarly situated, he identifies the race of some of the inmates. However, Plaintiff specifically states that he is bringing his equal protection claims "based on the class of one theory." Nevertheless, out of an abundance of caution, the Court notes that if Plaintiff had intended to bring an equal protection claim premised on racial discrimination, such a claim would be dismissed because Plaintiff alleges no facts

14

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)). ).

"'[T]he hallmark of [a class-of-one] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (emphasis omitted) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is

---

suggesting that Defendants discriminated against him due to his race. Moreover, although Plaintiff identifies other comparator inmates for purposes of his equal protection claims, the Court notes that "a section 1983 cause of action is entirely personal to the direct victim of the alleged constitutional tort," and Plaintiff cannot state a § 1983 claim against Defendants regarding their interactions with other inmates. *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000) (citations omitted); *see Garrett v. Belmont Cnty. Sheriff's Dep't*, 374 F. App'x 612, 615 (6th Cir. 2010); *Barber v. Overton*, 496 F.3d 449, 457–58 (6th Cir. 2007); *Jaco v. Bloechle*, 739 F.2d 239, 241 (6th Cir. 1984) ("Section 1983 creates a cause of action for deprivation of civil rights . . . [and] [b]y its own terminology, the statute grants the cause of action 'to the injured party.'" (footnote omitted)).

unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a *group* with whom she shares characteristics, but rather that the defendants simply harbor animus against her *in particular* and therefore treated her arbitrarily." (emphasis in original)). A plaintiff "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty.*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210–11 (10th Cir. 2004)).

In this action, Plaintiff contends that Defendants Sisco and Dirschell treated him differently than other similarly situated inmates after Plaintiff pleaded guilty to a class II misconduct charge and that Defendant Dirschell "selectively enforce[s] the Honor Room/Cubicle criteria." (*See* Compl., ECF No. 1, PageID.17–18 (alleging, among other things, that Defendants Sisco and Dirschell failed to give "the same option [to Plaintiff] as all other prisoners living in B-2 Honor Room/Cubicle who received class II minor misconduct[s] and [were] found guilty").) Plaintiff identifies a number of other inmates, all of whom he contends were similarly situated. (*See id.*, PageID.12–15.) At this stage of the proceedings, the Court must take Plaintiff's factual allegations as true and in the light most favorable to him. Although it is not entirely clear from Plaintiff's allegations that all other prisoners living in the B-2 Honor Room/Cubicle were similarly situated

in all relevant respects,[11] the Court will not dismiss Plaintiff's Fourteenth Amendment equal protection claims against Defendants Sisco and Dirschell on initial review.

## Conclusion

For the foregoing reasons, the Court will drop Defendant Morrison as misjoined pursuant to Rule 21 of the Federal Rules of Civil Procedure. The Court will dismiss Plaintiff's claims against Defendant Morrison without prejudice. Plaintiff's Fourteenth Amendment equal protection claims against Defendants Sisco and Dirschell remain in the case.

An order consistent with this opinion will be entered.


Dated:   August 6, 2024                          /s/ Ray Kent
                                                 Ray Kent
                                                 United States Magistrate Judge

---

[11] For example, when identifying specific comparators, Plaintiff describes many of the inmates as being found guilty of misconduct charges, whereas, Plaintiff states that he pleaded guilty to the misconduct charge. Additionally, as another example, Plaintiff does not explain whether there was the same housing availability when other inmates were found guilty of misconduct charges or whether the other inmates had similar prior misconduct records.